Hon. John Van Lindt Executive Director New York State Racing and Wagering Board
This is in response to your Board's request for our opinion concerning the control and supervision of games of chance conducted under Article 9-A of the General Municipal Law.
Article 9-A, the Games of Chance Licensing Law, was enacted in 1976 following the 1975 amendment of Section 9 of Article I of the Constitution. This amendment made games of chance an exception to the general prohibition of gambling. In authorizing the exception, the people enjoined the Legislature to "ensure that such games are rigidly regulated to prevent commercialized gambling, prevent participation by criminal and other undesirable elements and the diversion of funds from the purposes authorized hereunder". Accordingly, the Legislature in its original enactment and in subsequent amendments has stressed the necessity for rigid regulation of games of chance. Section 185, the statement of purpose, states that all phases of games of chance "should be strictly controlled" and that the pertinent laws and regulations "should be strictly construed and rigidly enforced".
Section 194 deals with control and supervision of authorized games of chance. That section requires "the officer" to exercise "rigid control and close supervision" over all games of chance and requires an agent of the officer to make an on-site inspection during the conduct of all games of chance. Section 186 defines "officer" as the "chief law enforcement officer of a municipality outside the city of New York" or "the chief law enforcement officer of the county". (Supervision and control in New York City is the duty of the City's Department of Consumer Affairs.)
Your principal question concerns the meaning of "chief law enforcement officer". This term is not used in any other regulatory statute of this State. In the case of bingo, for example the governing body of a municipality is charged with the "rigid control and close supervision" of games of bingo and may use its "officers and agents" to inspect the premises where bingo games are played. (Section 484, General Municipal Law.) It appears, therefore, that the Legislature used the term "chief law enforcement officer" in the games of chance law to restrict municipalities in their choice of the "officers and agents" who are to control and supervise games of chance.
The most obvious meaning of "chief law enforcement officer" is the officer who is the head of the municipality's law enforcement agency, the city, town, or village police department. This meaning is supported by the definition itself, which implies that the officer exists prior to the licensing of games of chance. Otherwise, wording like that of Section 484 would have been used — that is, the legislative body would have been authorized to designate the enforcing officer. To put it another way, the Legislature in defining "officer" as the chief law enforcement officer of the municipality hardly could have intended to let the municipality confer that title on anyone it chose.
Subdivision 2 of Section 194 supports this interpretation of "officer". That subdivision permits a municipality to impose the duty of enforcing the games of chance law on the chief law enforcement officer of the county in which the municipality is located. (In return for having to accept the duty, the county receives a fee that otherwise would go to the municipality.) Subdivision 2 clearly permits any municipality to impose the enforcing duty on the county, but the significance of the permission is to solve the problem of the municipality that does not have a police department. That municipality is specifically authorized to require the county to control and supervise games of chance.
We conclude that the Legislature intended to authorize games of chance only in those cities, towns, and villages that have police forces or that exercise the option to impose the duty of control and supervision on their county's law enforcement agency.
You ask what power your Board has to enforce the requirement that a municipality without a police force opt to have the county control and supervise games of chance. Section 188-a directs your Board to supervise the administration of the Games of Chance Licensing Law and grants to the Board the power to adopt rules and regulations which "shall have the force and effect of law". In our opinion, your Board can adopt a rule providing that no license may be issued in a municipality that has no "officer" as defined in Section 186 unless the municipality has exercised its option under Section 194(2).